JOSE P. RUIZ, Plaintiff in Error, v. THE TERRITORY OF NEW MEXICO, Defendant in Error.

SYLLABUS BY THE COURT.

1. MURDER—SUFFICIENCY OF INDICTMENT.—The omission of the word "unlawful" in an indictment for murder in this Territory is not a fatal defect, where the indictment, as in this case, clearly and distinctly alleges the facts showing a murder by the unlawful killing of a human being, with malice aforethought. It is not necessary to use the very words of the statute defining the offense; it is sufficient if those used convey the same meaning.

2. MURDER—INTOXICATION AS A DEFENSE.—Where, upon a trial for murder, the defense interposed was, that the defendant was so grossly intoxicated that he was incapable of forming the necessary intent, the evidence showed that without provocation the defendant fired two shots, both of which took effect, killing one and injuring another of three, children engaged at play; that the defendant ran away in an attempt to escape, and changed horses after firing the shots. Held: That the evidence sustained the verdict of guilty of murder in the first degree, returned by the jury.

3.  CRIMINAL LAW—CONTINUANCE—CONSTITUTIONAL LAW.—Where a
defendant secures evidence in his favor, by an admission that an
absent witness would so testify if present, and such evidence is ad-
mitted, over his objection that he is entitled to have such witness
present.   Held: Not a violation of his constitutional right to face
the witnesses testifying against him.

*Error* to the District Court of Bernalillo County, Sec-
ond Judicial District.   Affirmed.

Facts are stated in the opinion.

SUMMERS BURKHART for plaintiff in error.

1.   The indictment is fatally defective, because it does
not charge, in words, that the killing was unlawful.

Our statute defines murder as the unlawful killing of a
human being with malice aforethought.   An indictment
thereunder must charge, in words, that the killing was un-
lawful, that being an essential element of the crime.   The
indictment here fails to so charge.   Territory v. Armijo, 7
N. M. 571.

2.   A defect in an indictment may be raised in this court
for the first time.   Territory v. Armijo, supra.

3.   The verdict is not supported by the evidence.

No killing without premeditation and deliberation can
be murder in the first degree.   These are of the essence of
the crime.

"The distinction between murder of the first degree and
murder of the second degree is, that while murder of the
second degree, to be murder at all, must be committed with
'malice aforethought,' in murder of the first degree the malice
aforethought must be 'deliberately premeditated.'"   1 Bishop
Crim. Law, Sec. 797.

In this case, it is evident from all the facts that this
premeditation and deliberation are absent.

Defendant, previously of good character, while riding
along the road in a state of beastly intoxication, fires a
shot which kills the deceased, a mere child of eight years,
playing in his father's yard.

Defendant was an entire stranger to deceased and his family. There was no provocation for the shooting, and there could have been no possible motive for it. All of the witnesses agree as to the intoxication of defendant, and he, himself, swears that he was in such a condition as to be absolutely irresponsible for his acts.

It is not contended that drunkenness is an excuse for homicide, but it must be taken into consideration in determining whether one accused of murder was in a state of mind capable of forming the intent necessary to constitute murder, and in fixing the degree, according to the presence or absence of deliberation and premeditation. And the courts hold that where the prisoner is shown to have been so drunk, when he did the deed, as not to be capable of entertaining the specific intent to kill, his offense is murder in the second degree. 1 Bish. Crim. Law, Sec. 409.

"Our statute adopts the common law definition of murder, and then distinguishes it of two degrees, defining the first degree specially by certain enumerated cases, and generally of the words 'any other kind of willful, deliberate and premeditated killing.' * * * * * What the definition requires, therefore, is a distinctly formed intent to kill, not in self-defense and without adequate provocation. It requires the malice prepense of the common law definition of murder to be, not a general malice, but a special malice that aims at the life of a person." Keenan v. Commonwealth, 44 Pa. St. 55.

Can it be said here on the facts of the case that defendant, greatly intoxicated, deliberately and premeditatedly formed the intention of killing a child whom he had never seen before and without provocation, and carried this intention into effect?

Does not the very atrocity of the crime show convincingly that it could not have been the act of a sane and responsible person, done with that premeditation and deliberation necessary to constitute murder in the first degree?

On the contrary, are not the probabilities strong that

defendant, crazed with drink and incapable of purpose, with-out premeditated intention to discharge his pistol or to hit any one, fired a shot which, by unhappy chance, killed this unfortunate boy?

If this be true, and this court must be convinced that it is true, can the judgment of the lower court be affirmed, notwithstanding the verdict of the jury?

4. The court erred in allowing to go to the jury as an ad-mission of defendant, over his objection, the statement of what Ambresie Gringas, who was not produced in court, would testify to, if present.

The sixth amendment to the Constitution of the United States provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.

Sec. 3765. Com. Laws of 1897, is as follows:

"In all criminal prosecutions, the accused shall have a speedy public trial by an impartial jury, unless the accused waives his right to a jury trial; he shall not be compelled to give evidence against himself; he shall have the right of be-ing heard by himself or counsel, or both; he shall be con-fronted with the witnesses against him, and shall have com-pulsory process for obtaining witnesses in his favor; and no person shall be holden to answer for any capital offense or felony but on indictment or information, unless the party accused shall waive his right to an indictment first to be found against him, except in cases arising in the land or naval forces, or offenses against the laws regulating the militia."

It needs no argument to show that no court has the power to deprive a defendant of this constitutional right to be confronted by the witnesses against him. Mattox v. U. S. 156 U. S. 237-244.

It is doubtful whether under our statute it may be waived by the prisoner. While the Legislature has said that a jury trial may be waived, that an indictment may be waived, it used the mandatory language "shall be confronted

with the witnesses against him." In this Territory, it is held that notwithstanding this statute, a defendant accused of a felony may not waive his constitutional right to a jury of twelve men. Territory v. Ortiz, 8 N. M., 151.

By a parity of reasoning, he can not waive his right to be confronted by the witnesses against him, especially where the statute does not give him the right of waiver as it does as to a jury trial.

But there was no waiver here. While there was an admission by defendant's attorney that Gringas would testify to certain things, if present, this admission was made subject to the objection that defendant was entitled to be confronted by the witness. It was clearly the duty of the trial court to keep the statement from the jury when this objection. On the contrary, the court allowed it to go in as the unequivocal admission of the defendant. It is immaterial whether the evidence thus admitted tended to prove defendant's guilt or not. He was deprived of his constitutional right without his consent, and this is reversible error. Bram v. U. S., 168 U. S. 541.

But this admission going to the jury as it did placed defendant in the position of admitting that the witness would testify to a state of facts about which he had already sworn he knew nothing, and this, it seems to me, would go to impeach his evidence and be prejudicial to his case. Whether this be so or not, the territory can not offer and have admitted such evidence for the purpose of impeaching defendant, and then contend that it has not that effect. Bram v. U. S., 156 U. S. 541.

EDWARD L. BARTLETT, Solicitor-General, for defendant in error.

In this court, in the brief of plaintiff in error, there are only four points argued. The first two being as to the indictment, which, it is urged, is fatally defective, because it does not charge in words that the killing was unlawful.

The indictment in this case, omitting the caption, is as follows:

"That one Jose P. Ruiz late of the county of Bernalillo aforesaid, on the twenty-seventh day of May, A. D. 1898, at the county of Bernalillo, in the Territory of New Mexico, did feloniously, wilfully, deliberately, premeditatedly and with malice aforethought make an assault on one Patricio O'Bannon, and a certain pistol, commonly known as a revolver, which then and there was loaded with gun powder and one leaden bullet, and by him, the said Jose P. Ruiz, had and held in his hand, he, the said Jose P. Ruiz, did then and there feloniously, wilfully, deliberately, premeditatedly, with malice aforethought, shoot off and discharge at and upon the said Patricio O'Bannon, with the intent him, the said Patricio O'Bannon, to kill and murder, thereby and by this striking the said Patricio O'Bannon with the said leaden bullet, inflicting on and in the head, neck, breast, back and body of the said Patricio O'Bannon, one mortal wound, of which said mortal would the said Patricio O'Bannon did then and there instantly die, and so the said Jose P. Ruiz, did, in the manner and form aforesaid, feloniously, wilfully, deliberately, premeditatedly and with malice aforethought, kill and murder the said Patricio O'Bannon, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of New Mexico."

And plaintiff in error cities, Territory v. Armijo, 7 New Mex. 571, in support of his contention.

That case was an indictment for an assault with a deadly weapon, under the statute which provided that "any person who shall unlawfully assault or strike at another with a deadly weapon * * * * any person who shall draw, flourish or discharge a rifle gun, or pistol except the same be done by lawful authority or in the lawful defense of himself, his family or his property."

At page 579 of this case the court, after considering this statutory crime in the above language, quotes from Territory v. Miera, 1 New Mexico, 387, as follows:

"By using the word 'unlawfully' in the statute the Legislature intended to discriminate between acts of vio-

lence which may be lawful, and those which are not. * *
* * * The word feloniously, as used in the indictment,
can not be used to supply the omission of the word 'unlaw-
fully,' because the statute especially provides that assaults
may be committed in defense of his person, property, etc."

This Miera case was an indictment under the statute
providing:

"That if any person shall unlawfully assault or threaten
another, etc."

While the indictment under this statute charges that
the defendant "Did beat, bruise and wound one Guadalupe
Lopez, but omits to aver that it was done unlawfully."

Our statute defining murder in the first degree under
which this indictment was found is section 1063 Compiled
Laws 1897, and is as follows:

"All murder which shall be perpetrated by means of
poison or lying in wait, torture, or by any kind of willful,
deliberate and premeditated killing, or which is committed
in the perpetration of or attempt to perpetrate any felony,
or perpetrated from a deliberate and premeditated design
unlawfully, and maliciously to effect the death of any human
being or perpetrated by any act greatly dangerous to the
lives of others, and indicating a depraved mind regardless
of human life, shall be deemed murder in the first degree."

And the indictment follows it exactly concluding with
the words:

"And so the said Jose P. Ruiz did in the manner and
from aforesaid feloniously, willfully, deliberately, premedi-
tatedly and with malice aforethought, kill and murder the
said Patricio O'Bannon, contrary to the form, etc."

Vol. 2. Bishop on Criminal Procedure, section 543,
says:

" 'Unlawfully' is unnecessary equally in common law
murder and manslaughter, even if in a statute against mur-
der, it is sufficiently supplied in the indictment by 'felon-
iously and of his malice aforethought.' " Thompson v.

State, 36 Tex. 326; Beavers v. State, 58 Indiana, 530; Jerry v. State, 1 Blackford, 395.

"Murder" is a technical term as is "ravish." It is exactly defined in section 1063, and is fully described in the indictment, and the word unlawfully is in no sense an essential element of the crime which was "the felonious, wilfull, deliberate, premeditated assault with malice aforethought upon the deceased with the intent to kill and murder him," and the subsequent allegation that he so did in the manner and form aforesaid feloniously, wilfully, deliberately, premeditatedly and with malice aforethought, kill and murder the said Patricio O'Bannon. And this objection was first made to the court below in the motion for a new trial. It was purely a matter of form, and the objection did not go to the substance of the indictment, and this court decided at its last term February 27th, 1899 in the case of Haynes et al. v. United States, 56 Pac. 283, that:

"Formal defects in the indictment are cured by plea and trial."

The second error complained of is that the verdict is not supported by the evidence, and that in this case it is evident from all the facts that this premeditation and deliberation were absent on account of the condition of the defendant, the testimony showing him in the language of plaintiff in error to have been in such a state of voluntary intoxication as to be entirely irresponsible for his acts, and to quote from the brief of defendant. "Does not the very atrocity of the crime show convincingly that it could not have been the act of a sane and responsible person, done with premeditation, and deliberation necessary to constitute murder in the first degree? On the contrary are not the probabilities strong that the defendant crazed with drink and incapable of purpose, without premediated intention to discharge his pistol or hit any one, fired a shot which by unhappy chance killed this unfortunate boy."

In other words that this court should review the findings of the jury on this point, upon the testimony which

was uncontradicted and come to a different conclusion from the jury under the instructions of the court. These instructions are most full and favorable to the defendant upon this very point. The court told the jury in instruction number 19 at page 17 of the transcript as follows:

. "If for any reason you have a reasonable doubt either that the defendant wilfully, unlawfully, and deliberately, and premeditatedly killed the deceased, or if you have a reasonable doubt that the defendant without the design to effect such death unlawfully, wilfully killed deceased or for any other reason you are not satisfied of the defendant's guilt, it is your duty to find the defendant not guilty."

And in the latter of instruction 21 on page 18:

"But upon the question whether the act was deliberate or premeditated it (drunkenness of defendant) is proper to be considered and only for this purpose. It neither excuses the offense nor avoids the punishment which the law inflicts, when the character of the offense is ascertained."

And in instruction 22 page 18 of the transcript:

"If the jury believe from the facts and circumstances in the case and beyond a reasonable doubt that the defendant fired the shot which killed the deceased Patricio O'Bannon then any defense such as drunkenness which the defendant may rely upon in palliation or to reduce the grade of the crime from that of murder in the first degree to that of murder in the second degree must be by the defendant satisfactorily established, and if the jury believe that the killing was effected as aforesaid but that circumstances exist making it murder in the second degree it is the duty of the jury to find the defendant guilty of murder in the second degree."

And again in instruction number 25 at page 19 the court says:

"If you have a reasonable doubt of defendant's guilt you should acquit him, but a doubt to authorize an acquittal on that ground should be a substantial doubt touching defendant's guilt arising from full, fair and careful consideration of all the evidence, facts, and circumstances in evidence in the case, and not a mere possibility of his innocence."

Thus giving in these instructions, the defendant the full benefit of his defense and even instructing in the second degree to support which there was no testimony in the case.

The last objection is that the court erred in allowing to go to the jury an admission by the defendant over his own objection the statement of what Ambrosio Gingras would testify to if present. The statement in the record on this point is as follows ·at page 68 of the transcript:

"Ambrosio Gingras a witness called in rebuttal by the territory not responding to his name it is admitted by the defendant that the witness if present would testify to the following:

"That this defendant and this man Garcia were there in the saloon of Chaves & Co. for several hours drinking whisky, beer, brandy, soda and other drinks on the day of the killing, and that he saw them going off toward the bridge."

Mr. Medler, (attorney for defendant). "This admission is made subject to the objection that witness not being here and his name appearing on the back of the indictment that the defendant is entitled to his presence in the court. It is admitted that said witness if present would testify to such facts. This statement is interpreted to the jury."

And plaintiff in error urges in his brief that it is a constitutional right guaranteed by the constitution of the United States that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him, and that no court has the power to deprive a defendant of his constitutional right, and that he cannot waive it. We submit that where the accused may waive his constitutional right to be presumed innocent until he is proven guilty by pleading that he is guilty, or by a confession that he may likewise waive the right to "enjoy" the presence of a witness against him, and while the court

might not compel him to do so, this is a personal privilege which may be waived, and not in any respect like his constitutional right to a jury of twelve men. And this admission was doubtless made by the defendant for his own benefit, as it was in his favor and tended to establish his defense that he was extremely drunk at the time of the homicide, and if the testimony had any effect at all it was to strengthen that defense. The case cited by plaintiff in error, Bram v. United States, 168 U. S. 541, was in regard to the admission made by defendant claimed to be a confession, tending to prove the guilt of defendant, while this admission of testimony would tend to prove his innocence, or at least to reduce the grade of the offense.

McFIE, J.—At the October term, 1898, of the district court of Bernalillo county, plaintiff in error was indicted for the murder of Patricio O'Bannon. Being without means to employ counsel, Mr. Edward Medler was appointed to defend, and upon trial in the district court of Bernalillo county the defendant was convicted of murder in the first degree, and sentenced to be hanged, as the law requires in such cases.

The defendant in the court below sued out a writ of error, and brought the case to this court for review.

A reversal of the judgment of the court below is sought upon the following grounds, which have been assigned as errors by the appellant:

The first assignment of error is: "The indictment is fatally defective because it does not charge in words that the killing was unlawful." It appears that the word "unlawful" is omitted from the indictment in this case, but it further appears that other words are used in the indictment, which undoubtedly convey the same meaning as the omitted word, and which, in the judgment of this court, made the use of the word unlawful unnecessary.

The indictment in this case is identical, practically, with the indictment in the case of Davis, v. Utah Terri-

tory, 151 U. S. p. 153, in which case the word "unlawfully" was omitted from the indictment.

At the time the indictment was returned in the case of Davis v. Utah Territory, the statute of Utah defining the crime of murder, and the different degrees thereof, was also identical with the statutes of this Territory defining that crime and the different degrees thereof. In that case the defendant demurred to the indictment on the ground that it did not constitute an offense, and the point made by counsel was that the word unlawful, not being used in the indictment, it was therefore fatally defective, as the statute defined murder to be "the unlawful killing of a human being, with malice aforethought," and was followed by the definition of murder in the first degree, which definition is identical with our statute.

The demurrer being overruled, trial was had, and the defendant was convicted. An appeal was taken to the Supreme Court of the United States, and, in passing upon this question, that court said:

"The first assignment of error relates to the overruling of the demurrer to the indictment. The point here made is that as murder is defined by the statute to be the unlawful killing of a human being with malice aforethought it was necessary to charge, in words, that the killing was unlawful. This position cannot be sustained, for the facts alleged present, in clear and distinct language, a case of unlawful killing. It is not necessary, as we have seen, to use the words of the statute defining the offense. It is sufficient if those used convey the same meaning. The indictment sets forth the case of an assault and battery, committed by the defendant wilfully, feloniously, and with deliberately premeditated malice aforethought, and resulting in instant death, whereby the defendant did kill and murder, contrary to the statute, etc. Such facts plainly import an unlawful killing."

The doctrine announced above is not in conflict with the doctrine announced in the cases of the Territory v.

Miera, 1 N. M. 387, and the Territory v. Armijo, 7 N. M.
571. In the statutes under which the indict-
ments in both of those cases were drawn,
MURDER: suffi-    the word "unlawfully," alone was used, with-
ciency of in-
dictment.          out any other similar words, or those which
imported practically the same meaning, and
it was thereby sought to distinguish between
an innocent act and an illegal assault. In the case of Miera,
the statute provided that "if any person shall unlawfully
assault or threaten another, in a menacing manner, or shall
unlawfully strike or wound another, the person so offend-
ing," etc.

In the case of the Territory v. Armijo, the indictment
was drawn under the deadly weapon act, section 3 of which
provides, "that any person who shall unlawfully assault or
strike at another with a deadly weapon," etc. It will be
observed that the word unlawfully, in both of these stat-
utes, is the gist of the offense, and without its use in the
indictment no offense whatever is charged; but there is no
similarity between those statutes, and the statute defining
murder, wherein a number of words are used, all of which
enter into the offense, and import very much the same thing;
and it·is not necessary to use all of these words in an indict-
ment for murder, but only such as are necessary to show
that the offense was committed unlawfully, and this will
supply the absence of the word unlawfully in such an indict-
ment.

The case of Davis v. Utah Territory is conclusive, upon
the first assignment of error in this case, and the same must
be overruled as to the alleged defect in the indictment.

The next assignment of error that this court deems
necessary to consider is the third, which is as follows: "The
verdict is not supported by the evidence."

While this assignment of error is too general, and in an
ordinary case would not be sufficient, this is a capital case,
and therefore the court will consider this assignment, in
asmuch as the argument of the learned counsel, at the

hearing in this court, indicates what he deems to be the error intended to be raised by this assignment. The counsel contends, and, in fact, that was the sole defense urged in behalf of the defendant in the lower court, that the defendant was intoxicated to such a degree that he was totally incapable of forming a deliberate and premeditated intention to kill, which is necessary to a conviction of murder in the first degree; and that, therefore, his conviction of murder in the first degree can not be sustained in view of the fact of the intoxication of the defendant.

MURDER: intoxication as a defense.

Voluntary intoxication is not a defense in law that will excuse the commission of the crime of murder in the first degree, or any other degree, unless such intoxication is so gross as to render the defendant incapable of knowing the difference between right and wrong, or incapable of forming a wilful and deliberate intention to kill.

The evidence in this case as to the intoxication of the defendant, and the extent and effect of it, was for the consideration of the jury, and in passing upon the guilt or the innocence of the defendant it was for them to determine whether or not the defendant was capable or incapable of forming a willful and deliberate intention to kill the deceased, at the time he did so, by reason of the intoxication which the evidence disclosed.

This evidence was fairly and properly submitted to the jury, and considered by them under fair and proper instructions by the court, and after a full consideration of the evidence both for and against the defendant, and of the intoxication shown, the jury found the defendant guilty of murder in the first degree.

The evidence further shows that the defendant, and another person with whom he had been associating and drinking on the afternoon of the day of the killing, rode off in the direction of the place where the child Patricio O'Bannon and two other children were playing, near a well on

the premises of the father of the deceased; that while the three children were playing together, making no remarks, or in any way provoking the defendant to do any act of violence toward them, in fact without anything whatever to attract the attention of the defendant to them, he drew his pistol and fired two shots at the children, killing the deceased, and seriously wounding another of the three children.

It will, therefore, be seen that the defendant fired but two shots, and that both of them took effect, one of them killing Patricio O'Bannon and the other seriously wounding one of the other children. Now this tends to show that the defendant, while he may have been intoxicated, was not intoxicated to such an extent that he did not know what he was doing, because he was capable of taking deliberate aim at these children, and accomplishing the death of one of them.

It is further shown by the evidence that he immediately fled. Not only that, but, when found by the officer, he had changed horses, which also tended to show that he knew what he had done, and was endeavoring to escape the consequences thereof.

All this evidence was for the consideration of the jury in passing upon the degree of the intoxication of this man, and whether it rendered him incapable of forming a premeditated intention to kill, necessary to a conviction. The jury passed upon this evidence adversely to the defendant, and the court sees no reason for interfering with the determination of the jury upon that point.

These circumstances were very damaging to the defense made in this case, for, at the time of the killing, if this man, in firing two shots, was able to make both of them effective, the jury had a right to weigh this evidence, and to determine what it established, and it is not for this court, and we have no disposition, to interfere with the findings of the jury, and we believe the jury were warranted in so finding. This evidence strongly tended to show that the defendant

was capable of forming the necessary intent to kill, and knew what he was doing, when he deliberately fired the shots directly at these children, and the evidence certainly tended to show that this killing was "perpetrated by an act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life," which is one of the definitions of murder in the first degree.

In the formation of the intent to kill, it is not necessary that there shall be any great length of time involved, between the formation of such intent to kill, and the killing, in order to constitute the premeditation required by the statute. All that is necessary, is, that the intent to kill shall be completely formed in the mind of the defendant, and deliberated upon, that is, fully determined, prior to the firing, the fatal shot; even if this intent, completely formed, is entertained but a moment, it will be sufficient.

Therefore the third assignment of error is overruled.

The fourth assignment of error is that "The court erred in allowing to go to the jury as an admission of defendant, over his objection the statement of what Ambrosio Gringas, who was not produced in court, would testify to, if present."

It is true that the defendant has a right to be confronted by his accusers, and to face the witnesses who testify against him. This is a constitutional provision that defendant has a right to invoke in his defense. But in this case, we are of the opinion that this constitutional provision has not been violated, and that the error assigned here does not bring the case within that provision of the constitution so as to render what occured in the court below, as shown by the record, a reversible error. The record shows that after the prosecution had rested, and the defense had closed their case, so far as the testimony was concerned, the district attorney announced to the court that there was a witness, whose name was endorsed upon the back of the indictment, who had not been called in chief, and whom he desired to produce as a witness in rebuttal, but that the witness was not present, and did not respond when his name was called.

There is nothing to show that the district attorney persisted in delaying the case until this witness could be produced in court, but at this juncture the record shows that the following took place:

"Ambrosio Gringas, a witness called in rebuttal by the Territory, not responding to his name, it is admitted by the defendant that the witness, if present, would testify to the following:

" 'That this defendant and this man Garcia were there in the saloon of Chavez & Co., for several hours, drinking whisky, beer, brandy, soda, and other drinks on the day of the killing, and that he saw them going off toward the bridge.' "

"Mr. Medler:   This admission is made subject to the objection that witness not being here and his name appearing on the back of the indictment that the defendant is entitled to his presence in court."

"It is admitted that said witness, if present, would testify to said facts.

"This statement is interpreted to the jury."

From this record it is evident that the defendant was more anxious to have this evidence introduced than the prosecution.   The statement here admitted, which it is admitted that the witness, if present, would testify to, is wholly evidence in the interest of the defendant.   It is identically similar evidence to that given by the witnesses for the defendant in his own defense, and certainly tended to corroborate the defendant upon the point that he was intoxicated to such a degree that he was incapable of committing the offense charged against him.   This evidence, which was admitted, was wholly in favor of the defense, and tended to injure rather than benefit the prosecution.

The constitutional right of the defendant is to face the witnesses called to testify against him, and such is not the

case here. The witness in this case was testifying, so far as this admission is concerned, for the defendant, and certainly the error, if any error was committed at all, would be harmless and not reversible. It is very plain from this record of what occurred at that time, that the defendant, through this admission, succeeded in obtaining evidence for himself, and excluding any evidence that the witness might give, that would be against him. He succeeded, in other words, in getting another witness for himself, and at the same time, by the objection, prevented the prosecution from obtaining the evidence of that witness favorable to the prosecution.

It is true that Mr. Medler, the attorney for the defendant, stated that he made the admission subject to the objection that the witness not being present, and his name appearing on the back of the indictment, that the defendant is entitled to his presence in court; but the effect of this objection was simply to prevent the prosecution from attempting to get any more testimony of this witness into the record than the portion that the defendant desired to be introduced, and which he secured by this admission. The language of this objection made by Mr. Medler would indicate that he was anxious to have the testimony of this witness, because one of the reasons for the objection is that the defendant is entitled to the presence of this witness in court, his name appearing on the back of the indictment.

We see nothing (in allowing this admission to be interpreted to the jury) that was prejudicial or harmful to the defendant. There is nothing in it tending to show that the witness was testifying against the defendant, but wholly in his favor. The defendant was not deprived of his rights by this admission of testimony in his favor, and he could not in any event be prejudiced or injured by this testimony, as it tended very strongly to aid his defense and assist in his acquittal.

<div style="margin-left:2em; font-variant:small-caps; font-size:smaller;">

CRIMINAL law: continuance: constitutional law.

</div>

The error is not well assigned, and will also be over-ruled.

There is no reversible error disclosed by this record, and the judgment of the lower court, therefore, is affirmed, and the judgment and sentence of the court shall be executed on Friday, June 1st, 1900.

Mills, C. J., and Parker, J., concur.

---

[826.   May 3, 1900.]

### SYLLABUS BY THE COURT.